IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

VONNE HARRISON CARTER, *et al.*,

    **Plaintiffs,**

v.                                                      Civil Action No. 3:16cv661

VIRGINIA DEPARTMENT OF GAME
AND INLAND FISHERIES,

    **Defendant.**

## MEMORANDUM OPINION

This matter comes before the Court on Plaintiffs Ms. Vonne Harrison Carter, Dr. Joice Eaddy Conyers, Ms. Charlene Thomas Easter, and Ms. Carol King-Robinson's (collectively, "Plaintiffs") collective Motion For Leave to File Amended Complaint (the "Motion to Amend"). (ECF No. 25.) Defendant Virginia Department of Game and Inland Fisheries ("VDGIF") opposes the Motion to Amend. (ECF No. 28.) Plaintiffs replied. (ECF No. 29.) The matter is ripe for disposition. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. For the reasons that follow, the Court will deny the Motion to Amend.[1]

### I. Factual and Procedural Background

#### A.     Procedural History

Plaintiffs commenced this action by filing a 34-page, 172-paragraph Complaint (the "Original Complaint") against VDGIF, the Virginia Department of Human Resources Management ("VDHRM"), and VDGIF Executive Director Robert W. Duncan (collectively, the

---

[1] Given VDGIF's lack of opposition, and after due consideration, the Court also will allow Ms. Easter's claim of Hostile Work Environment in the Original Complaint to go forward. Thus, the Court will amend its September 29, 2017 Order to dismiss all Ms. Easter's claims *except* her claim of Hostile Work Environment. (ECF. No. 21, ¶ 4.)

"Original Defendants"). (Original Compl., ECF No. 1.) The Original Complaint alleged four causes of action in the following manner:

> Count I: Claim of Title VII Racial Discrimination[2] against VDGIF and VDHRM;
>
> Count II: Claim of Title VII Hostile Work Environment[3] against VDGIF and VDHRM;
>
> Count III: Claim of Title VII Retaliation[4] against VDGIF and VDHRM; and,
>
> Count IV: Claim of § 1983 Racial Discrimination, Hostile Work Environment, and Retaliation against Duncan in his Individual Capacity pursuant to 42 U.S.C. § 1983[5]

In total, Plaintiffs asserted 28 claims in the Original Complaint.

---

[2] Title VII prohibits an employer from "discharg[ing] any individual, or otherwise ... discriminat[ing] against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e-2(a).

[3] A hostile work environment in violation of Title VII exists "[w]hen the workplace is permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal citations omitted) (quoting *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 64, 65 (1986).

[4] To state a claim for retaliation under Title VII, "a plaintiff must provide factual allegations showing: (1) engagement in a protected activity; (2) an adverse employment action; and[,] (3) a causal link between the protected activity and the employment action." *Coleman v. Md. Ct. App.*, 626 F.3d 187, 190 (4th Cir. 2010).

[5] 42 U.S.C. § 1983 provides a private right of action for a violation of constitutional rights by persons acting under the color of state law and provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

The Original Defendants filed a Partial Motion to Dismiss (the "Motion to Dismiss"), seeking to dismiss 26 of the 28 claims.[6] (ECF No. 6.) The Original Defendants did not seek dismissal of Dr. Conyers's Title VII claim for retaliation against VDGIF or Ms. King-Robinson's Title VII claim for racial discrimination against VDGIF. Plaintiffs opposed the motion, (ECF No. 10), and the Original Defendants replied, (ECF No. 12).

In September 2017, the Court issued a 39-page Memorandum Opinion granting in part and denying in part the Motion to Dismiss (the "First Dismissal Decision").[7] (ECF No. 20.) The decision exhaustively examined—viewing the allegations in the proper lens and favorably to Plaintiffs—the factual basis of Plaintiffs' claims and the nature of the Original Defendants' retorts. The Court thoroughly explained its legal determination. The Court allowed six claims to proceed: one retaliation claim (Plaintiff Conyers); two race discrimination claims (Plaintiffs Conyers and King-Robinson); and, three hostile work environment claims (Plaintiffs Conyers, King-Robinson, and Carter). The Court also dismissed VDHRM and Duncan as defendants.

Plaintiffs thereafter filed the three-page Motion to Amend.[8] (ECF No. 25.) Plaintiffs do not contest the dismissal of VDHRM or the § 1983 claims against Defendant Duncan. (Mot.

---

[6] In their Motion to Dismiss, the Original Defendants reasonably accused Plaintiffs of filing "a 'shotgun' style . . . pleading to jumble facts together and confuse legal claims." (Mem. Supp. Mot. Dismiss 2, ECF No. 7.) Plaintiffs responded that "[t]here exist four narratives in this matter, but only one story," (Resp. Mot. Dismiss 2, ECF No. 10), and asserted that they had "divided [the Complaint] into multiple sections for ease of reference and organization of information." (*Id.* at 3.)

[7] In that same decision, the Court denied the Original Defendants' Motion to Disqualify, which is not at issue here.

[8] In violation of Eastern District of Virginia Local Civil Rule 7, Plaintiffs filed the Motion to Amend without any supporting brief. Local Rule 7(F) of the Eastern District of Virginia provides, in relevant part:

> All motions, unless otherwise directed by the Court and except [enumerated motions that do not include a motion to amend], shall be accompanied by a

3

Am. ¶ 4, ECF No. 25.) In support of their motion, Plaintiffs argue only that the Motion to Amend should be granted because of the complex set of facts before the Court. Resting solely on the precept that leave to amend should be granted freely, Plaintiffs proffer cursory argument echoing their earlier suggestion that their four narratives require detailed explication:

> The fact pattern alleged in the Complaint is complex, and Plaintiffs believe that a retooling of the narrative for each of the four original Plaintiffs to this action would address the Court's concerns [in its First Dismissal Decision] and clarify and support the clear factual nexus between each Plaintiff's account of discrimination and the specific claims alleged against Defendant VDGIF.

(Mot. Am. ¶ 5.) Plaintiffs contend that no basis to deny leave to amend exists because they do not "allege any new claims, but merely [offer] a good faith effort to provide clarity and detail to Plaintiffs' already pled Title VII claims." (Mot. Am. ¶ 8.)

VDGIF opposes the Motion to Amend except as to Count VIII, the hostile work environment claim raised by Plaintiff Easter. (ECF No. 28.) Of the five other individual claims Plaintiffs seek to revive, VDGIF contends that "the remainder of Plaintiffs' Motion to Amend should be denied because the new alleged facts do not address the deficiencies" the Court found in dismissing the claims in the Complaint. (Resp. Mot. Am. 2, ECF No. 28.)

### B. Allegations in the Proposed Amended Complaint

Plaintiffs propose a 51-page, 312-paragraph Amended Complaint[9] that organizes claims by Plaintiff rather than by cause of action. (ECF No. 25-1.) While acknowledging the inability to file a claim against two defendants, Plaintiffs nonetheless seek—a second time—to raise three

---

written brief setting forth a concise statement of the facts and supporting reasons, along with a citation of the authorities upon which the movant relies . . .

E.D. Va. Loc. Civ. R. 7(F)(1).

[9] Plaintiffs' proposed amendment adds 17 pages and 140 paragraphs to their Original Complaint. Paradoxically, Plaintiffs support their request to amend by stating it will allow them "the opportunity to present a more *streamlined* argument against the remaining Defendant, VDGIF." (Mot. Am. ¶ 4 (emphasis added).)

4

claims per named Plaintiff. Via the 51-page document, Plaintiffs raise a total of twelve claims against VGDIF. Each Plaintiff alleges one generic count of race discrimination, one count of hostile work environment, and one count of retaliation as follows:

> Count I: Ms. Carter's Title VII Racial Discrimination Claim against VDGIF;
>
> Count II: Ms. Carter's Title VII Hostile Work Environment Claim against VDGIF;
>
> Count III: Ms. Carter's Title VII Retaliation Claim against VDGIF;
>
> Count IV: Dr. Conyers's Title VII Racial Discrimination Claim against VDGIF;
>
> Count V: Dr. Conyers's Title VII Hostile Work Environment Claim against VDGIF;
>
> Count VI: Dr. Conyers's Title VII Retaliation Claim against VDGIF;
>
> Count VII: Ms. Easter's Title VII Racial Discrimination Claim against VDGIF;
>
> Count VIII: Ms. Easter's Title VII Hostile Work Environment Claim against VDGIF;
>
> Count IX: Ms. Easter's Title VII Retaliation Claim against VDGIF;
>
> Count X: Ms. King-Robinson's Title VII Racial Discrimination Claim against VDGIF;
>
> Count XI: Ms. King-Robinson's Title VII Hostile Work Environment Claim against VDGIF; and,
>
> Count XII: Ms. King-Robinson's Title VII Retaliation Claim against VDGIF.

In doing so, Plaintiffs seek to resurrect all individual claims against VDGIF dismissed by this Court in the First Dismissal Decision.

## II. Legal Standard: Motion to Amend

A district court retains the discretion to grant or deny leave to amend, "but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Federal Rule of Civil Procedure 15(a)(2)

instructs courts to "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). The Supreme Court of the United States has identified considerations that justify denying amendment, including undue delay, bad faith, repeated failure to cure deficiencies, undue prejudice to the opposing party, and futility of the amendment. *Davis*, 371 U.S. at 182; *see also Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999) ("The law is well settled 'that leave to amend a pleading should be denied *only when* the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile.'") (quoting *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986)). "That said, a district court's failure to articulate its reasons for denying leave to amend does not amount to an abuse of discretion so long as its reasons are apparent." *United States ex rel. Carson v. Manor Care, Inc.*, 851 F.3d 293, 305 n.6 (4th Cir. 2017) (internal quotation and citations omitted).

A district court may deny leave to amend when the proposed amended complaint fails to satisfy the requirements of the Federal Rules of Civil Procedure. *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008). A denial may be justified where the proposed amended complaint fails to meet Rule 8(a),[10] *see, e.g., Ciralsky v. C.I.A.*, 355 F.3d 661, 664–65 (D.C. Cir. 2004), Rule 9(b),[11] *see, e.g., Kellogg*, 525 F.3d at 376, or Rule 12(b)(6),[12] *see, e.g., U.S. ex rel. Black v. Health & Hosp. Corp. of Marion Cty.*, 494 F. App'x 285 (4th Cir. 2012).

---

[10] Rule 8(a) requires that a pleading seeking relief contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

[11] Rule 9(b) requires that a party alleging fraud or mistake "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

[12] Rule 12(b)(6) allows dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

### III. Analysis: Motion to Amend

The Court presumes familiarity with the facts underlying the case and will, as it did in the First Dismissal Decision, apply the familiar standards for stating various Title VII claims. The Court issued its First Dismissal Decision after liberally reading the allegations in the Original Complaint in the light most favorable to Plaintiffs, as required when analyzing a Rule 12(b)(6) motion to dismiss. Even applying the liberal interpretation, 22 of the 28 original claims did not survive initial review. Plaintiffs now propose a longer litany of allegations organizing contentions by individual plaintiff, but they do so while complicating, rather than curing, the deficiencies in the Original Complaint. And they seek to amend the Complaint in violation of Local Rules. Under these circumstances, the Court will deny the Motion to Amend because it fails to meet Rule 8(a).

#### A. Legal Standard to Satisfy Rule 8(a)

"A complaint fails to state a claim if it does not contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Dicks v. Flury*, No. CV GLR-14-1016, 2018 WL 453525, at *4 (D. Md. Jan. 16, 2018) (quoting Fed. R. Civ. P. 8(a)(2)). When analyzing whether a complaint fails to comply with Rule 8(a), courts consider various factors, including: "the length and complexity of the complaint, whether the complaint was clear enough to enable the defendant to know how to defend himself, and whether the plaintiff was represented by counsel." *North Carolina v. McGuirt*, 114 F. App'x 555, 558 (4th Cir. 2004) (internal citations omitted). The balance of these factors weighs against allowing Plaintiffs to amend their Original Complaint.

#### B. The Length and Complexity of the Complaint Lacks Justification

At base, the proposed Amended Complaint offends Rule 8 on the most basic grounds: it is neither short, nor plain. Rule 8(a) requires that a complaint contain "a short and plain

7

statement of the claim." Fed. R. Civ. P. 8(a)(2). Rule 8(d) further requires that each allegation "be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). Construing Plaintiffs' pleadings "so as to do justice," which here means affording VDGIF fair notice of each plaintiff's claim and the grounds on which it rests, the Court must deny the Motion to Amend. Fed. R. Civ. P. 8(e).

Despite Plaintiffs' contention otherwise, the proposed Amended Complaint muddies, rather than clarifies, the allegations and factual underpinning of each plaintiff's claims. After careful evaluation of Plaintiffs' lengthy and detailed Original Complaint, the Court issued its First Dismissal Decision, allowing some claims to proceed, despite a somewhat convoluted presentation. It did so given the applicable law, and so that Plaintiffs could have their day in court. But the additional, or substituted, claims continue to mix factual and legal theories, even more repeatedly, and again inappropriately.

### 1. Plaintiffs' Allegations Under Title VII's Statutory Framework

Plaintiffs' contention that their "complex" story requires repeated elaboration does not persuade. "Many plaintiffs attempt to excuse lengthy and confusing complaints by pointing to the type of claim or theory under which they are pleading." *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 776 (7th Cir. 1994) (evaluating claims under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.*). Even complaints alleging complicated violations under complex statutory schemes must meet the requirements of Rule 8(a)(2) and Rule 8(d)(1).[13] *Id.* at 775–76. In *Vicom*, the Court suggested the lower court could have appropriately

---

[13] The 1994 *Vicom* decision discussed then-Rule 8(e)(1): "Each averment of a pleading shall be simple, concise, and direct." 20 F.3d 771, 776. In 2007, Rule 8 was "amended as part of the general restyling of the Civil Rules to make them more easily understood and to make style and terminology consistent throughout the rules. These changes [were] intended to be stylistic only." Fed. R. Civ. P. 8 advisory committee's note to 2007 amendment. As part of this amendment, then-Rule 8(e)(1) was reordered and modified, so that the equivalent Rule 8(d)(1) currently states, in pertinent part: "Each allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1).

dismissed the amended complaint with prejudice for failing to meet Rule 8. *Id.* at 776. The allegations in this case rest on Title VII, which, although dense, presents a more straightforward statutory framework than some of the more elaborate statutory schemes over which plaintiffs sometimes stumble.

Plaintiffs sue one defendant under one statute. They concede the accuracy of the First Dismissal Decision in eliminating VDHRM, Director Duncan, and any § 1983 claims. Plaintiffs do not invoke—nor does the Court suggest they could or should—multiple or complex statutes that require a heightened pleading requirement or more thorough review of facts. The straightforward Title VII claims Plaintiffs raise appear complex only because Plaintiffs do not articulate a single theory of race discrimination in any of the four counts of their Amended Complaint alleging race discrimination. As noted below, this unfairly fails to give notice to VDGIF.

### 2. Factual Basis for the Claims

Plaintiffs contend that the complex fact pattern they bring complicates their claims, not the statutory precepts of Title VII. Counter to counsel's seemingly earnest representation otherwise, this Court cannot find that the lack of clarity stems from an especially complex case: it instead flows from needlessly repeating allegations. This renders many of the claims unclear and, ultimately, unfair to VDGIF, who would have to ferret out each plaintiff's claims. *See* 5 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1281 (3d ed. 2004).

A comparison of the Original Complaint to the Amended Complaint demonstrates the cause for confusion. In ten pages of its First Dismissal Decision, the Court outlined the allegations in the Original Complaint, separating factual allegations by plaintiff, before viewing those allegations favorably to discern whether each plaintiff stated a claim. (First Dismissal

Decision 2–12.) Plaintiffs characterize their proposed Amended Complaint as more clearly establishing the factual nexus—by plaintiff—of individual claims. But in restructuring the allegations, they succeed only in proffering an Amended Complaint largely repetitious, not only of the Original Complaint, but within itself. The result is a prolix and unworkable document.

For instance, Paragraphs 55–61 of the Original Complaint outlined the "General Discriminatory Hiring Standards and Practices at VDGIF." (Original Compl. 12–15.) The proposed Amended Complaint now includes these same allegations separated out by plaintiff. Consequently, this subheading appears *four times* in the Amended Complaint instead of just once, as it did in the Original Complaint. Rather than stating the allegations once on behalf of each plaintiff, the Amended Complaint now repeats four identical allegations in separate sections of the document, changing only the named plaintiff.[14] (Am. Compl. ¶¶ 31–33 (Carter); ¶¶ 112–14 (Conyers); ¶¶ 175–77 (Easter); ¶¶ 250–52 (King-Robinson).) But the Court had liberally read these allegations as pertaining to each Plaintiff. Nothing in the redundant allegations in the proposed Amended Complaint further elucidates the nature or basis of the claims brought by any individual Plaintiff.

Similarly, the Original Complaint alleged discriminatory conduct under the heading of "Discriminatory Reaction to Hiring of Additional Black Employees." (Original Compl. ¶¶ 62–72.) The proposed Amended Complaint now includes these allegations, using the identical heading, by plaintiff, so that the heading appears three times in the Amended Complaint. Thus,

---

[14] The Amended Complaint, for instance, repeatedly asserts the following: "VDGIF agents specifically advised [named plaintiff] that the agency did not hire minority candidates for officer positions due to anticipated potential confrontations with Caucasian members of the public." (Am. Compl. ¶ 32 (Carter); ¶ 113 (Conyers); ¶ 176 (Easter); ¶ 251 (King-Robinson).) The Original Complaint alleged the same facts more concisely: "VDGIF agents specifically advised Plaintiffs that the agency did not hire minority candidates for officer positions due to anticipated potential confrontations with Caucasian members of the public." (Original Compl. ¶ 56.)

21 paragraphs in the Amended Complaint (composed of allegations drawn nearly verbatim from the Original Complaint) repeat each other without change, except—again—to name the plaintiff bringing that particular count. (Am. Compl. ¶¶ 37–43 (Carter); ¶¶ 115–21 (Conyers); ¶¶ 183–89 (Easter).)

This redundancy clouds rather than clarifies the claims. All Plaintiffs here have waived conflict. But the attempt to impose an overarching "story" alongside that of each plaintiff may falter not because the story is complex, but because the individual stories are not identical and do not support the same counts. In other words, it would be wise to consider whether the effort to "tell four stories" in one narrative may be running counter to representing four individual plaintiffs who have different stories to tell.[15]

### C. The Amended Complaint Fails to Give VDGIF Fair Notice

To satisfy Rule 8, a complaint must provide "fair notice of what the claim is and the grounds upon which it rests." *Cisco v. Norfolk S. Ry. Co.*, No. CIV .A. 2:12-739, 2012 WL 2862602, at *2 (S.D. W. Va. July 11, 2012). It must be "clear enough to enable the defendant to know how to defend himself." *McGuirt*, 114 F. App'x at 558. The proposed Amended Complaint lacks clarity to a degree that prevents VDGIF from ascertaining how to defend itself.

Though not invoked regularly, Courts have long noted that a "complaint that is prolix and/or confusing makes it difficult for the defendant to file a responsive pleading and makes it

---

[15] Counsel evidently bring these claims in good faith. But group representation inherently involves treading thin ice. Each plaintiff must receive adequate representation, which includes advice about the strength of her individual claim or claims. A conflict can develop at any time, and the desire to tell one story should not override presentation of each plaintiff's strongest case.

This is true because the decision to pursue a claim—even an ultimately successful one—carries costs, literally. Any plaintiff must pay her costs even for a claim successfully brought. And any claim pursued but later deemed to lack legal basis can, albeit in exceptional circumstances, risk a plaintiff's responsibility for fees or costs incurred by *defendant*. *See* Fed. R. Civ. P. 11(c)(1).

difficult for the trial court to conduct orderly litigation." *Nevijel v. N. Coast Life Ins. Co.*, 651 F.2d 671, 675 (9th Cir. 1981) (citations omitted) (affirming dismissal of the plaintiff's amended complaint for failing to satisfy Rule 8(a)).[16]

Plaintiffs' proposed 51-page Amended Complaint muddies allegations beyond those already inartfully pled in the Original Complaint. Each plaintiff alleges a generic claim of "race discrimination" in addition to her hostile work environment and retaliation claims. But not one plaintiff specifies the theory of race discrimination under which she proceeds in her generic "race discrimination" count. In repetitious fashion, Plaintiffs instead invoke talismanic phrases from what might be variant theories of discrimination. By suggesting several theories rather than pleading plainly any particular theory (or more than one), the Amended Complaint sows confusion and does not provide fair notice. The Court need not allow an amendment that fails to cure the deficiencies in the Original Complaint. *See, e.g., McGuirt*, 114 F. App'x at 559 ("In dismissing the first complaint, the district court specifically directed the plaintiffs to allegations of a § 1983 claim to give an example of the type of conclusory language that violated [Rule] 8(a) and 12(b)(6). Yet, in their second complaint, the plaintiffs failed substantially to alter even that claim, repeating almost verbatim what had been stated in the first complaint.").

This becomes especially evident when evaluating Ms. Carter's generic race discrimination claim. Plaintiffs' Motion to Amend does not challenge the First Dismissal Decision as improperly relying on the wrongful termination theory when dismissing Ms. Carter's original race discrimination claim. Plaintiffs do not—via a short and plain statement—seek

---

[16] The court in *Nevijel* noted that the counsel proferring the prolix complaint had a "long history of non-compliance with the Federal Rules of Civil Procedure . . . . [that had] placed an immense burden on the state and federal courts." 651 F.2d at 675. Although counsel for Plaintiffs cannot be said to similarly offend the Federal Rules of Civil Procedure, the *Nevijel* court's core finding that that prolix pleadings unfairly disadvantage defendants and create inefficiency in the court proceedings applies to the proposed Amended Complaint at bar.

either to bolster, to abandon, or to add theories to the wrongful termination count dismissed in the First Dismissal Decision.[17] Plaintiffs must state a claim with sufficient precision so that Defendants could assert defenses to it.

In addition, in seeking to amend the Original Complaint, all four plaintiffs intermix allegations of "witness[ing]" or "observ[ing]" "disparate treatment." (*See, e.g.*, Am. Compl. ¶¶ 71–73, 83 (Carter); ¶¶ 151–53, 163 (Conyers); ¶¶ 226–28, 238 (Easter); ¶¶ 290–92, 302 (King-Robinson)), but nothing in the proposed Amended Complaint appears to establish, or seeks to establish, a stand-alone disparate treatment count based on race as opposed to any other potential claim based on a different legal theory. Instead, Plaintiffs present one of a jumble of theories via untethered talismanic phrases such as "disparate treatment," "any reasons cited . . . . for demotion, discipline, and/or termination from employment were pretextual," or broadly asserting that a plaintiff engaged in "protected activity." Even in this lengthy document,

---

[17] Because Plaintiffs plainly fail to plead a "short and plain statement," of their entitlement to relief, the Court declines to analyze each proposed revived claim under Rule 12(b)(6). Fed. R. Civ. P. 8(a)(2). That said, the pleading deficiencies at bar suggest that the proposed amendment likely would be futile.

For instance, Ms. Carter likely could not revive any wrongful termination claim here. Although the Amended Complaint now alleges, on information and belief, that the "sham" VDHRM investigation was launched after "false and unsubstantiated complaints" against *Ms. Carter* were lodged "solely due to her race," (Am. Compl. ¶ 46), and for the sole purpose of discrediting *Ms. Carter*, (Am. Compl. ¶ 47), the conclusory allegations do not rise to a plausible level. *Twombly*, 550 U.S. at 545. Even construed liberally, simply adding her name to this suspect investigation does not plausibly set forth the necessary inferential link between the termination of Ms. Carter's employment and her race. *See Calvary Christian Ctr. v. City of Fredericksburg*, 832 F. Supp. 2d 635, 639 (E.D. Va. 2011) (stating that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to support a plausible claim) (quoting *Iqbal*, 556 U.S. at 678)).

In addition, Ms. Carter contends she complained to Dr. Conyers about discrimination, not any other VGDIF employee. Dr. Conyers did not terminate Ms. Carter's employment. (Am. Compl. ¶ 44). And finally, Ms. Carter fails to allege how this Court plausibly can attribute the racially-motivated actions of Ms. Howe—a VDHRM employee—to any employee at VDGIF. Ms. Carter acknowledges that VDHRM has properly been dismissed from the case.

however, Plaintiffs fail to allege claims of race discrimination based on disparate treatment either plainly or plausibly.[18]

### 1. The Amended Complaint Imprecisely Invokes Federal Law

Plaintiffs also do not give fair notice under Rule 8 because they invoke legal theories too imprecisely. In *all twelve counts* of their proposed Amended Complaint, Plaintiffs insert allegations attempting to attach liability through *"respondeat superior"* to VDGIF by actions of named and unnamed VDGIF employees acting "in the scope of their employment." (*See* Am. Compl. ¶¶ 58, 69, 88, 138, 149, 168, 213, 224, 243, 277, 288, 307.) Plaintiffs make no effort, however, to allege how or why *respondeat superior* pertains to this Title VII claim. *See, e.g., See Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 278–79 (4th Cir. 2015) (articulating the binding standard to assess whether an employee can be deemed a supervisor to attach vicarious liability to an employer); *Cooper v. Smithfield Packing Co.*, 724 F. App'x 197, 203 (4th Cir. 2018) (same); *see also Faragher v. City of Boca Raton*, 524 U.S. 775 (1998) (discussing, among other issues, competing legal theories for vicarious liability in Title VII

---

[18] Although the Court denies the Motion to Amend for failing to meet Rule 8, not under Rule 12(b)(6), no plaintiff likely could sustain a stand-alone disparate treatment claim on the merits. For example, Ms. Carter's allegations in support of her generic race discrimination claim could not stand as a disparate treatment claim.

Even viewing her allegations favorably, Ms. Carter's claims about the treatment of Caucasian employees lack any content that would establish why those persons could be considered similarly situated. (*See, e.g.,* Am. Compl. ¶ 27 (alleging that a Caucasian employee given Ms. Carter's position after she was transferred from it "was paid a much higher hourly wage" without establishing that the person was similarly situated or brought comparable experience); Am. Compl. ¶ 35 (alleging, on information and belief, that a Caucasian employee who made a major reporting error in the Virginia Retirement System was never counseled or disciplined, without plausibly alleging why any lack of discipline to that employee could be comparably compared to Ms. Carter for purposes of a disparate treatment claim); Am. Compl. ¶ 45 (alleging only on information and belief that Caucasian employees who engaged in racially motivated "boycott" did not receive discipline or reprimand).) And while Ms. Carter contends that she reported disparate treatment to Dr. Conyers, she fails to assert disparate treatment claim as a basis for her termination. Dr. Conyers did not dismiss Ms. Carter.

cases, concluding that actions directly affecting employment implicate a different standard, and establishing an affirmative defense for hostile work environment claims).

And, as noted above, three of the proposed amended counts seek to establish *VDGIF* liability through actions taken by a *VDHRM* employee—who works for a separate agency serving the entire Commonwealth—without articulating a legal basis to do so. (Am. Compl. ¶¶ 47–49, 58, 69, 88, 103, 106, 108–10, 138, 149, 168, 268, 277, 288, 307; *cf.* Original Compl. ¶ 13 ("VDHRM is the central human resource agency for state government.").) By imprecisely articulating the law, Plaintiffs fail to give VDGIF proper notice and therefore place at risk the viability of *all* allegations in the proposed Amended Complaint.

### 2. Plaintiffs' Factual Allegations Are Too Attenuated

In addition to invoking imprecise legal theories, Plaintiffs stretch their factual allegations too far. Plaintiffs repeat assertions nearly verbatim without plausibly articulating how and why they pertain to each individual. Instead, Plaintiffs stack allegations "on information and belief" on top of other allegations "on information and belief" in an unpersuasive effort to shore up inadequate pleadings in the Original Complaint.

"A plaintiff is generally permitted to plead facts based on 'information and belief' if such plaintiff is in a position of uncertainty because the necessary evidence is controlled by the defendant." *Ridenour v. Multi-Color Corp.*, 147 F. Supp. 3d 452, 456 (E.D. Va. 2015). This allowance is not limitless. *See, e.g., Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 442 (7th Cir. 2011) (holding, in the context of a pleading for fraud under Rule 9(b), that "[w]hen a plaintiff sets out allegations on information and belief, he [or she] is representing that he [or she] has a good-faith reason for believing what he [or she] is

saying, but acknowledging that his [or her] allegations are 'based on secondhand information that he [or she] believes to be true'") (citing Black's Law Dictionary 783 (7th ed. 1999)).

Here, element after element of several claims rely on a series of facts alleged only "on information and belief." They do so without suggesting sources of second-hand information giving rise to any probable inference to support that claim as to each plaintiff. Thus, the allegations veer away from supporting plausible inferences, and turn instead toward unsupportable conclusory talismanic statements. The stacked statements "on information and belief" do not, in this case, establish a right to relief "above the speculative level." *Twombly*, 550 U.S. at 545. Such layered assertions may make a right to relief "conceivable," but they cannot, on their own, establish plausibility, so they fail as a matter of law. *Id.* at 570.

As put forth, the proposed Amended Complaint would place "an unjustified burden on the district judge and the party who must respond to it because they [would be] forced to ferret out the relevant material from a mass of verbiage." 5 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1281 (3d ed. 2004). The proposed Amended Complaint's lengthy and confusing presentation fails to give VDGIF fair notice of each plaintiff's claims and the grounds upon which they rest. *Cisco*, WL 2862602, at *2. This could also unfairly increase litigation costs for VDGIF "[b]ecause it is difficult to file a pleading in response to a prolix and confusing complaint."[19] *Nevijel*, 651 F.2d at 675.

---

[19] Although allowing the Amended Complaint to go forward would not necessarily prejudice VDGIF, the Court notes that courts consider the potential for increased litigation costs to defendants when determining whether amendment would unduly prejudice defendants. *See, e.g., Flame S.A. v. Indus. Carriers, Inc.*, No. 2:13-CV-658, 2014 WL 4202470, at *3 (E.D. Va. Aug. 22, 2014) (denying plaintiff's motion to amend because allowing the amendment would require reopening discovery, which would unfairly prejudice defendants by increasing litigation costs).

### D. The Court Will Deny the Motion to Amend

Although leave to amend should be granted freely, a district court has discretion to deny a motion to amend when the proposed amendment would fail to satisfy the Federal Rules of Civil Procedure. *See, e.g., Kellogg*, 525 F.3d at 376. Plaintiffs' proposed Amended Complaint fails to satisfy Rule 8(a).

First, the proposed Amended Complaint presents a surplus of allegations that unintelligibly blend the experience of one employee with that of another. By overcomplicating the factual allegations through repetition and redundancy, Plaintiffs proffer an unworkable document that fails to fit the factual allegations to Title VII, a fairly straightforward statutory scheme. The lengthy amendment fails to satisfy Rule 8's requirement that a pleading be "short and plain." Fed. R. Civ. P. 8(a)(2).

Allowing such claims to persist in all twelve proposed counts would cause undue confusion and place too great a burden on VDGIF. The repetitive nature of such mix-ups would make matters worse. Plaintiffs cannot blur legal theories to the detriment of plausibly alleging Title VII violations to which VDGIF can respond. *See, e.g., Faragher*, 524 U.S. 775. Plaintiffs cannot rely on attenuated allegations that VDGIF cannot defend against. In short, the prolix proposed Amended Complaint fails to give VDGIF fair notice of the claims alleged and the grounds upon which they rest.

Denying the Motion to Amend does not end Plaintiffs' case. The Original Complaint, as narrowed by the September 21, 2017 Order and amended by this Memorandum Opinion and Order, brings a hostile work environment claim on behalf of each employee. The nature of this claim—unlike the claims this Court dismissed—is conducive to Plaintiffs' effort to tell four stories in one narrative.

Finally, the Court notes Plaintiffs failed to follow local rules when filing their motion. Although this decision does not rest on that mistake, the Court admonishes Plaintiffs that future filings, especially any additional motion to amend, must be filed according to the Federal Rules of Civil Procedure and the Local Rules of Civil Procedure for the Eastern District of Virginia.

### IV. Conclusion

For the foregoing reasons, the Court will deny to Motion to Amend. Without opposition, the Court also will amend its September 29, 2017 Order to allow Ms. Easter's Hostile Work Environment claim to proceed.

An appropriate Order shall issue.

/s/
M. Hannah Lauck
United States District Judge

Richmond, Virginia
Date: 7/27/18